Nichols, C. J.
This is one of a series of proceedings in quo warranto instituted by the attorney general in his official capacity for the purpose of ousting certain indemnity insurance companies from exercising the franchise of writing within *251 the state of Ohio insurance to indemnify employers against loss or damage for personal injury or death resulting from accident to employes.
In its answer the defendant admits that it is entering into contracts with employers in Ohio, who elect and are duly authorized by law to pay the compensation and furnish the medical, surgical, nursing and hospital attention, services, medicines and funeral expenses directly to injured employes, or to the dependents of such employes as may be killed. Denial is made of the charge that the policies issued by the defendant cover any liability on account of any injury to employes by the wilful act of any employer or the failure of such employer to observe any lawful requirements for the safety of his employes.
The attorney general demurs to the answer. Several grounds are set forth, only one of which, however, the second, is necessary to be considered to determine the rights of the parties to this action.
In this particular case the issue is a .narrow one, confined indeed to one question, namely, the constitutionality of Section 22 of the workmen’s compensation act (103 O. L., 72); for, by the second specification of the demurrer of the attorney general, the constitutionality of Section 22 (Section 1465-69, General Code) is directly challenged, and likewise the right of any employers to pay compensation directly to their employes, or to be indemnified therefor by contract with insurance companies.
The section in question, briefly stated, authorizes employers who will abide by the rules of the state *252 liability board of awards and as may be of sufficient financial ability or credit to render certain the payment of compensation to injured or killed employes or their dependents, to pay individually the compensation provided in the act directly to injured employes or the dependents of killed employes.
The charge is made that Section 22 is unconstitutional, null and void, because:
First. It contravenes. the provision of Section 35 of Article II of the Constitution of Ohio, the section authorizing the passage by the general assembly of a compulsory workmen’s compensation act.
Second. It is violative of Section 2 of Article I of the Constitution of Ohio, wherein it is stated that “Political power is inherent in the people. Government is instituted for their equal protection and benefit.”
Third. Because it is irreconcilably inconsistent with Section 26, Article II of the Constitution of Ohio, providing that all laws of a general nature shall have uniform operation throughout the state.
Fourth. Because of its repugnancy to the Fourteenth Amendment to the Federal Constitution, especially that part wherein the amendment forbids any state of the Union denying to any person equal protection of the laws.
The first of this series of objections is supported by argument to the effect that the constitutional amendment granting power to the general assembly to enact a compulsory compensation act provided *253 the exclusive method by which compensation should be gathered and dispensed.
It is claimed that Section 22 denies to a pari of the workmen of the state permission to participate in the fund, and excuses a portion of the employers of the state from compulsory contribution to the fund, while all others are compelled to contribute.
The doctrine of “Expressio itnius est exclusio alterms” is invoked by the state.
This court is not now concerned with the operative effect of the act, nor with the administrative methods; but, taking Section 22 as it was framed and enacted into law by the general assembly, we are unable to see wherein it offends against the constitution.
By the terms of this section the industrial commission retains and must exercise the most complete supervision over the award and payment of compensation by those who by permission of the commission are permitted to pay directly to injured or the dependents of killed employes. The employe is favored with the most complete guarantee that he will receive the same benefits he would have received had his employer contributed to the state insurance fund. The underlying purpose of the compensation act is in no manner thwarted.
Before this independent method of dispensing compensation is permitted, the industrial commission must determine that the noncontributing employer is of sufficient financial ability to render certain the payment of compensation to injured and killed employes or their dependents. This is the crux of the matter. It ought not escape attention *254 that the constitutional provision is permissive and not mandatory, and it is to be gathered from a perusal of it that the details of the law and the method of its administration were largely left to the good sense of the general assembly. The law could have been framed, no doubt, so that all employers would have been compelled to participate in the one fund to be administered wholly by the state board, but the law’s departure from that exclusive method is not of such palpable nature as to suggest to this court that it should destroy such portion of the law.
The second and fourth constitutional objections to Section 22 may be considered as one, since they are of like import, it being urged that the section violates the equal-protection clause of our Bill of Rights and that part of the Fourteenth Amendment to the Federal Constitution forbidding the denial by any of the states of equal protection of. the laws.
The third objection will be considered with the second and fourth, for essentially, and so far as this act is concerned, Section 26 of Article II, to the effect that all laws of a general nature shall have uniform operation throughout the state, is only expressing in another form the doctrine of equal protection before the law.
Counsel for the relator, while granting without question the right of the general assembly to distinguish, select and classify objects of legislation, at the same time assert that the classification made by Section 22 is unnatural, arbitrary and unreasonable.
*255 The classification effectuated by this section is one of employers rather than of employes, although it must be admitted that employes, without having any voice in the matter, are by virtue of the election of their employers necessarily also classified.
It is not always an easy matter, by the mere examination of a statute, where classification of any sort is attempted, to determine whether the classification is arbitrary, unreasonable and unnatural. Probably one of the most sensible tests is to determine whether any substantial favor is gained by the one class or any greater burden is fastened on the other by reason of the classification.
Measured by this test, it is felt that the assaults on this section must fail. Neither employer, employe, nor the state, suffers any additional burden, nor are they subjected to any substantial discrimination.
It is possible that all of the employers of the state might have elected to pay the compensation direct to the injured employe. Had this been the case, there would still be a large field for the board of awards to occupy, for it would still be the law-chosen intermediary between the employer and employe, to see that justice is done in every case. And, again, it were possible that no employer would avail himself of the system of paying direct.
However, the choice of the two methods is open to all. The law creates no favored class; it only conditions the choice by the necessities of the case, in order that the compensation may be certain.
Whether the contributing employer is compelled to pay a greater premium to the state fund, by *256 reason of the election of others to pay direct, is, and possibly for some time to come, will be, an undeterminable question. The court cannot presume that such exemption would so operate. Theoretically it should not increase the premium, since the paymaster in either event must pay the same compensation.
This conclusion is fortified by consideration of the fact that the state itself by direct appropriation from the general revenue funds of the state pays all charges and expenses incident to the discharge of this great trust.
There is no claim made, nor could one be made in reason, that accidents to employes are more likely to be anticipated in the one case than in the other.
The state itself suffers no additional burden by reason of any number of employers electing to pay the compensation direct. In fact, the labors of the commission and the expense incident thereto are lessened to the extent that compensation is paid directly to the employe. The employe cannot suffer either through delay or diminution of award.
In view of above facts we are unable to observe in the terms of Section 22 any denial of the constitutional guarantee of equal protection before the laws.
If the law is faithfully administered, and we are bound to assume that it is and will be, there is absolutely no discrimination between the employes of contributing and noncontributing employers, nor can there be.
The state board of awards that administers the fund contributed by the employers exercises the *257 closest scrutiny and control over those employers who pay direct. So far as we can see, the only difference is in the person of the paymaster—in the one case, the state, and, in the other, the employer. The law expressly provides that the compensation when paid direct shall in no event be less than that paid out of the state insurance fund. As heretofore stated, the board of awards must be satisfied of the financial ability of the noncontributing employer, and is further authorized to require such security or bond from such employers as it may deem proper, adequate and sufficient to secure to injured employes the payment of compensation. In other words, the state board of awards is clothed with full authority to make certain the payment of compensation, just as certain in fact as if the state fund itself was to be drawn upon.
If, then, the compensation in the one case is to be as great as in the other, and if the prompt payment is as certain in the one case as in the other, the claim of inequality before the law is dissipated to the very vanishing point.
The matter of the wisdom or unwisdom of permitting indemnity insurance contracts to survive in Ohio has no possible connection with this question.
In the discussion of this phase of this series of lawsuits, the insurance issue, acute as it is, should therefore be entirely disregarded. Section 22 neither authorizes nor denies the right of employers to enter into indemnity contracts to protect them from loss or damage from injury to employes, and we cannot see how any injured employe, or the dependent of any killed employe, is *258 compelled to rely upon an insurance indemnity company to secure their compensation, or to have any relation whatever with such companies. If an injured employe elects to avail himself of the provisions of the workmen’s compensation act, the law protects just as amply the employe of a noncontributing employer as the employe of one who has contributed to the fund. The court is of opinion that Section 22 violates neither of the “equality before the law” sections of the constitution.
In this connection it is proper to observe that under the present constitution the supreme court of Ohio has been clearly and distinctly directed by the people of Ohio that the power to set aside laws passed by the general assembly, over which the people exercise the veto power through the referendum, is to be exercised with the greatest care. Not only does the long-established rule laid down in Cass v. Dillon, 2 Ohio St., 607, still obtain in all its restrictive effect, but the privilege of exercising the vast responsibility of this power has been hedged about with the most positive and drastic limitations. In Section 2, Article IV of the Constitution, the very section which gives the court its existence, it is provided that “No law shall be held unconstitutional and void by the supreme court without the concurrence of at least all but one of the judges.” Much significance is to be attached to the inclusion of this provision in the judicial article. It represents, as is known of all men, a compromise between those of our people who sought to deny to the court the right to exercise the power at all and those who felt that the supreme court should be un *259 hampered by any such restriction. Of all the states of the Union the constitution of ours alone has thus expressly granted this great power to its highest court, and we are reminded that it should be exercised with the greatest possible care and reserve.
The power was exercised almost from its beginning by the supreme court of Ohio, but always, until 1913, by and through a claim of an implied grant of power. A vast amount of discussion, with a display of much learning, has been had in recent years with regard to the exercise of this implied power, both as to the state and federal courts. As to the merits of this controversy, we are not called on to, and do not, express opinion; for happily in Ohio our power in this respect, with its pronounced limitation, is one of express grant.
It is proper to add, in conclusion, that while the attorney general, as a party, filed the demurrer to the answer of the defendant, wherein the alleged unconstitutional features of Section 22 were plead, he did so at the earnest request of his associated counsel, who are the attorneys in this case of The Ohio State Federation of Labor, but he, himself, both by brief and oral argument, most vigorously defends Section 22 as being a constitutional enactment.
The second ground of the demurrer is overruled.

Demurrer overruled and petition dismissed.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.